UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────────x

ROSE MARIE QADER,

                         Plaintiff,

     - against -                                  05 Civ. 0052 (CM)

THE PEOPLE OF THE STATE OF NEW YORK,
BERNADETTE ULMA (POLICE COURT OFFICER),
THE ENTIRE NEW ROCHELLE POLICE
DEPARTMENT,

                         Defendant.
──────────────────────────────────────────────x

# ORDER AND DECISION GRANTING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

On July 9, 2004, plaintiff's son appeared before Judge John P. Colangelo at the New Rochelle City Court. (Complaint ("Cplt.") ¶ 2). After his case was called, a fight broke out between plaintiff's son and three police officers. (Cplt. ¶ 3). Plaintiff, upon witnessing this altercation, exclaimed "O' My God O' My God." (Cplt. ¶ 4). As a result, Officer Bernadette Ulma handcuffed plaintiff, brought her before Judge Colangelo, and "insisted to the Judge that the plaintiff should be arrested." (Cplt. ¶¶ 6, 10). The Judge directed plaintiff to apologize for her disruptive behavior and, when she refused, held plaintiff in criminal contempt and "booked" her for 10 days in the Westchester County Jail in Valhalla, New York. (Cplt. ¶¶ 11-12). Officer Ulma then allegedly removed plaintiff from the courtroom by pulling her ponytail, beat her and stepped on her "backside," and threatened to "put her face in the toilet bowl." (Cplt. ¶¶ 13, 18-20). Thereafter, "the entire police department" refused to take plaintiff to the hospital and mocked her by laughing and giggling. (Cplt. ¶ 20). "The entire New Rochelle Police

Department" also fingerprinted the plaintiff and took her picture "for no reason." (Cplt. ¶ 22). As a result of this sequence of events, plaintiff suffered from "tremendous stress," a "terrible headache," dizziness, and fear of police officers, such that plaintiff "cannot cope with the daily life." (Cplt. ¶¶ 16, 23). Plaintiff brings this action, pursuant to 42 U.S.C. § 1983, for violation of her constitutional rights. She seeks $15,000,000.00 in damages.

This is the third federal action initiated by plaintiff concerning the same event. In both of the two prior actions, Magistrate Judge Yanthis recommended dismissal under <u>Monell v. Department of Social Services</u>, on the ground that plaintiff failed to allege the existence of a municipal policy or practice, or that any of her alleged injuries were proximately caused by such a policy or practice. Adopting Magistrate Yanthis's Report and Recommendation, Judge Robinson dismissed the first case, <u>Qader v. the New Rochelle Police Department</u>, 04-cv-7172, on April 12, 2005. Judge Brieant, also adopting Magistrate Yanthis's Report and Recommendation, dismissed the second action, <u>Qader v. the Town of New Rochelle</u>, 04-cv-7173, on February 16, 2005. With the exception of the named defendants in each action, the three Complaints are virtually indistinguishable.

Defendants move to dismiss this action for failure to state a claim and lack of subject matter jurisdiction. For the following reasons, defendants' motion is granted and the case is dismissed in its entirety.

**Standard of Review**

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>Harris v. City of New York</u>, 186

2

F.3d 243, 247 (2d Cir.1999). The test is not whether the plaintiff ultimately is likely to prevail, but whether he is entitled to offer evidence to support his claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in the plaintiff's favor. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir.2000). "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed.R.Civ.P. 12(b)(1). The burden rests on the party invoking the court's authority to establish that the court possesses subject matter jurisdiction over the action. See Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004) (internal citations omitted). That party must show by a preponderance of the evidence that subject matter jurisdiction exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002). In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider material outside the complaint. See Makarova, 201 F.3d at 113.

### Claims Against the New Rochelle Police Department

Because the New Rochelle Police Department is not a "suable entity" under 42 U.S.C. § 1983, plaintiff's action effectively is against the City of New Rochelle. See Lewis v. City of Mount Vernon, 984 F.Supp. 748, 756 n.2 (S.D.N.Y. 1997) (citing Orraca v. City of New York, 897 F.Supp. 148, 151-52 (S.D.N.Y. 1995)). Pursuant to 42 U.S.C. § 1983, in order to state a

3

valid claim against the City of New Rochelle, plaintiff must allege the existence of a specific municipal policy or practice and a causal connection between that policy or practice and the deprivation of her constitutional rights. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) (citing Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978)). Plaintiff has not alleged a municipal policy or a causal connection and, therefore, her claim against the City must be dismissed.

Additionally, because plaintiff's two previous actions against the City of New Rochelle and/or the Police Department of New Rochelle have already been dismissed, plaintiff's case is precluded under the doctrine of res judicata. See Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (stating that the doctrine of res judicata holds that "a final judgment on the merits of an action precludes the parties and their privies from relitigating issues that were or could have been raised in that action"); Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976) (stating that "judgments under 12(b)(6) are on the merits, with res judicata effects").

The court notes that plaintiff's claims of improper fingerprinting and photographing and denial of medical treatment fail on additional grounds.

First, plaintiff's allegation that she suffered a violation of her constitutional rights by being fingerprinted and photographed is erroneous and frivolous. Because she had been found guilty of criminal contempt, fingerprinting and photographing were not only appropriate, but also were mandated under Section 160.10(1) and (3) of the New York Criminal Procedure Law.

Second, because plaintiff had already been found guilty of criminal contempt when she came into the custody of the New Rochelle Police Department, her claim for denial of medical

treatment must be analyzed under the Eighth Amendment's cruel and unusual punishment clause.  See Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [her] serious medical needs.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104).  This standard incorporates both an objective and a subjective component.  Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).  The objective component addresses the severity of the plaintiff's medical needs while the subjective component, requiring deliberate indifference, focuses on the state of mind of the defendant.  Id.  In this case, plaintiff's dizziness and "terrible headache" do not satisfy the objective component, and thus her medical needs do not rise to the level of a constitutional claim.

### Claims Against the State of New York and Officer Ulma

First, plaintiff's claims against the State of New York and Officer Bernadette Ulma (a court officer with the New York State Unified Court System) are barred by the Eleventh Amendment.  Eleventh Amendment immunity "represents a real limitation on a federal court's federal-question jurisdiction."  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997).  "[I]n the absence of consent a suit in which the state or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment."  Papasan v. Allain, 478 U.S. 265, 267 (1986) (citing Pennhurst State Sch. & Hosp. v. Helderman, 465 U.S. 89, 100 (1984)).  Because the State of New York has not consented to suit, plaintiff's action against the State is barred by the Eleventh Amendment.  Additionally, because Officer Ulma is being sued in her official capacity, the suit is deemed to be against the State.  See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  Therefore,

Eleventh Amendment immunity extends to plaintiff's action against Officer Ulma. See id.

Second, to the extent Officer Ulma is being sued in her individual capacity, plaintiff fails to state a claim against Officer Ulma for false arrest or malicious prosecution. The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). Likewise, the existence of probable cause is a complete defense to a claim of malicious prosecution. Savino v. The City of New York, 331 F.3d 63, 72 (2d Cir. 2002). Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F. 3d 625, 634 (2d Cir. 2000) (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)). In this case, Judge Colangelo's order of criminal contempt provided the requisite probable cause for Officer Ulma to arrest plaintiff. Therefore, plaintiff fails to state a claim against Officer Ulma in her individual capacity for either false arrest or malicious prosecution.

## Conclusion

For the foregoing reasons, the Complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants, and to close the file. The conference scheduled for November 3, 2005, is removed from the calendar.

This constitutes the decision and order of the Court.

Dated: October 31, 2005.

_____
U.S.D.J.